UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

------------------------------------------------------------------x
NACHMAN NACHMENSON,

               Plaintiff,

            -against-

GLORIA DIAZ, Social Worker; JULO DE JESUS,
Supervisor; ANTHONY RIVERA, Supervisor
Assistant; JULIA DAVIS MOTEN, Associate
Commissioner, Transitional Family Services; YANIA
GONZALEZ, Program Analyst; DENISE WILLIAMS,
Program Analyst Assistant; SUSAN NAYOWITH,
Supervisor; ELDA QUIJANO; TREVOR JARDINE,
Program Administrator; CARL S. MYRICKS, Program
Administrator - Region IV; EFRAIN ECHEVARRIA,
Case Manager; NYDIA TORRES, Case Manager;
DANIKA CHRISTIANI, Director of Case Manager;
MARGIE FERNANDEZ, Case Manager;
ERICK JIMENEZ, Director of Case Manager;
MITZIE AGARD, Director in DHS; DOREEN HOWE,
Associate Commissioner Transitional Service;
XENIA MALDONADO; ANNETTE HOLM; and
JAHMANI HYLTON, Deputy Commissioner Family
Service,

**MEMORANDUM AND ORDER**

17-CV-738 (LDH)(RML)

               Defendants.
------------------------------------------------------------------x
LaSHANN DeARCY HALL, United States District Judge:

       On February 9, 2017, Plaintiff Nachman Nachmenson, proceeding pro se, filed this action against two New York City agencies. By Order dated June 15, 2017, the Court granted Plaintiff's request to proceed *in forma pauperis* and dismissed the complaint for failure to state a claim, with leave to file an amended complaint. On July 10, 2017, Plaintiff filed his amended complaint, in which he named twenty new individual Defendants (the "Individual Defendants"). For the reasons that follow, the amended complaint is dismissed.

**BACKGROUND**

The original complaint alleged that "NYC" had failed to provide Plaintiff and his family with a voucher for permanent housing adequate for twelve family members, had stolen or broken his personal property, and had cursed Plaintiff and embarrassed his family members. (Compl., ECF No. 1.) In a subsequent letter dated April 2, 2017, Plaintiff described an incident on March 30, 2017, in which he was forcibly removed from the housing unit, and he, his wife, and their baby were taken to the hospital. (Pl.'s Apr. 2, 2017 Letter, ECF No. 4.) Subsequently, the family's belongings were packed and moved to a new location, and the family was investigated by the Administration for Children's Services ("ACS"). (*Id.*)

In his amended complaint, Plaintiff alleges that the Individual Defendants abused him for more than eight years while his family lived in a homeless shelter because Plaintiff is an Orthodox Jewish Rabbi. (Am. Compl. 11, ECF No. 10.) Plaintiff alleges certain Defendants requested paperwork to assist Plaintiff in obtaining housing, but failed to provide him with housing solutions for eight years. (*Id.*) Instead, he alleges, Defendants tried to transfer Plaintiff's family to other shelters. (*Id.*) Plaintiff opposed the transfers because he did not want his children to go to a different school. (*Id.* at 11-12.)

Plaintiff raises a number of issues concerning the treatment of his family at the shelter. For example, Plaintiff asserts that Defendant Julo de Jesus once denied him permission to build a sukkah.[1] (*Id.* at 12.) When Plaintiff later built a sukkah in the shared backyard, de Jesus told his assistant to break it down. (*Id.*) Plaintiff also alleges that another year, de Jesus told neighbors to throw things on the sukkah to bother Plaintiff and ruin the holiday. (*Id.*) In addition, Plaintiff alleges that workers at the shelter stole his mail, and that Defendants Yanya Gonzalez and

---

[1] A sukkah is a temporary shelter constructed for use during the week-long Jewish festival of Sukkot.

Danika Christiani inspected his family's dwelling unit "for no reason." (*Id.*) Plaintiff also alleges that workers removed unplugged refrigerators and a freezer from Plaintiff's unit and told Plaintiff that he was not permitted to keep them. (*Id.*)

On March 29, 2016, Defendant Carl S. Myricks invited Plaintiff to a conference to assist him with obtaining housing. (*Id.* at 11.) Plaintiff asserts that Myricks threatened to open a case with ACS if Plaintiff did not talk to him about a pending lawsuit Plaintiff had filed. (*Id.*) The family was later investigated by ACS in April and May of 2016, but that investigation was later dropped. (*Id.*)

In January 2017, Plaintiff was informed that the shelter at St. John's Place would be closed on March 31, 2017, and all of its residents would be transferred to other shelters. (*Id.* at 12.) Plaintiff states that he received a housing voucher for $1200.00 in February 2017, but that he could not find housing for his family on that budget. (*Id.*) Plaintiff further alleges that, only days before the March 31, 2017 deadline, he received a voucher for $3600. (*Id.*) Plaintiff states that he went to housing court to postpone the departure from the shelter. (*Id.*) On March 30, 2017, Defendant Mitzie Agard "came with police officers and ACS agents." (*Id.*) Plaintiff was handcuffed, and he and his child were taken away to the hospital in separate ambulances. (*Id.*)[2] Plaintiff asserts that the hospital delayed in providing the child with kosher food and did not respect Jewish culture. (*Id.*) Plaintiff alleges that workers removed Plaintiff's belongings from his shelter unit and broke or failed to return certain items. (*Id.*) Plaintiff also alleges that Defendant Agard issued an abusive evaluation and opened an ACS case against Plaintiff a week

---

[2] In the April 2, 2017 letter, Plaintiff states that, during the incident on March 30, 2017, both his wife and baby were held in the hospital for more than an hour and that all three were released from the hospital. (Pl.'s Apr. 2, 2017 Letter, ECF No. 4.) The letter suggests that the Department of Homeless Services packed and moved the family's belongings to a new shelter while the family was away. (*Id.*)

3

before Passover because Plaintiff and his family are Jewish. (*Id.*)[3] On July 10, 2017, Plaintiff filed a letter addressed to the Honorable Robert M. Levy, in which he alleged that two of his ten children were not receiving childcare and could not "go to camp like all kids." (July 10, 2017 letter, ECF No. 11.) Plaintiff seeks to have the Defendants terminated from their positions and requests $200 million in damages. (Am. Compl. 13.)

## STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." Pro se complaints are held to less stringent standards than pleadings drafted by attorneys, and courts are required to read pro se complaints liberally and interpret them as raising the strongest arguments they suggest. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191-93 (2d Cir. 2008) (When "[a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally"). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Ashmore v. Prus*, 510 F. App'x 47, 48 (2d Cir. 2013) (summary order) ("District courts should generally not dismiss a pro se complaint without

---

[3] Plaintiff's wife, Guela Nachmenson, filed a separate case that included similar allegations about an ACS investigation against her husband. (Compl. at 6, *Nachmenson v. Admin. for Children's Servs*, No. 17-CV-3633 (WFK) (LB), ECF No. 1.) That case was dismissed for failure to state a claim. 2017 WL 2711931 (E.D.N.Y. June 22, 2017).

4

granting the plaintiff leave to amend."). At the pleadings stage, the court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 677-79 (2009)). The complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## DISCUSSION

By order dated June 15, 2017, the Court dismissed Plaintiff's original complaint for failure to state a claim. Specifically, the Court noted that Plaintiff had failed to state a claim for impermissible discrimination under the Fair Housing Act ("FHA") because he had not alleged that he and his family suffered disparate impact or disparate treatment in the conditions of their rent or the provision of services or facilities. (June 15, 2017 Mem. and Order 4, ECF No. 9.) The Court further observed that Plaintiff had not identified any other basis for this Court's subject matter jurisdiction. (*Id.*) The Court granted Plaintiff thirty days to file an amended complaint. (*Id.* at 5.)

The amended complaint fails to cure the deficiencies of the original complaint. Liberally construed, the amended complaint asserts that Defendants: (1) failed to provide permanent housing for Plaintiff's family; (2) inspected Plaintiff's family's unit in the homeless shelter and established and enforced restrictions on the use of his unit and surrounding spaces; (3) commenced an ACS investigation against Plaintiff, forcibly removed him from the home, and temporarily excluded him from the home while the investigation was pending; and (4) moved Plaintiff's belongings when the shelter closed and damaged or failed to return some of them. The Court construes these claims as alleging violations of the FHA and Plaintiff's right to due process under the Fourteenth Amendment. The Court addresses each of these allegations in turn.

5

As to Defendants' alleged failures with respect to Plaintiff's housing, in its June 15, 2017 Order, the Court carefully considered Plaintiff's housing claim and explained that Plaintiff had no constitutional right to housing "of a particular quality." (Mem. and Order 3, ECF No. 9 (citing *Lindsey v. Normet*, 405 U.S. 56, 74 (1972)). Moreover, the Court found that Plaintiff had not sufficiently alleged disparate impact or disparate treatment in the provision of services of facilities, as required to plead a violation of the FHA. (*Id.* at 4.) The Court gave Plaintiff an opportunity to demonstrate that his allegations of anti-Semitism were related to discrimination in housing. (*Id.* at 4-5.) The amended complaint repeats the same claim that the Court previously determined was deficient. Plaintiff claims that he and his family were "abused" because of their religion, but he still does not include specific allegations that Defendants' alleged religious prejudice had any actual impact on Plaintiff's application for a housing voucher or the provision of any other services. Accordingly, Plaintiff's housing claim fails to state a claim for violation of his constitutional rights.

Plaintiff also complains that Defendants inspected his unit, removed prohibited items, and prevented him from erecting a sukkah on shelter property. Again, Plaintiff has not established that these actions regulating use and safety in homeless shelters violated any constitutional rights or otherwise implicated federal laws or causes of action.

Plaintiff further alleges that Defendants commenced an ACS investigation and handcuffed and forcibly removed him from the unit on March 30, 2017. Plaintiff has not alleged that the investigation violated his constitutional rights. Indeed, although parents enjoy a constitutionally protected interest in their family integrity, this interest is counterbalanced by the compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves.

6

*See Wilkinson v. Russell*, 182 F.3d 89, 103-04 (2d Cir. 1999) (balancing interest in family integrity against interest in protection of children). The Court of Appeals for the Second Circuit "has adopted a standard governing case workers which reflects the recognized need for unusual deference in the abuse investigation context." *Id.* at 104. New York's Child Protective Services Act holds ACS responsible for investigating complaints of suspected child abuse, neglect, and maltreatment, and provides specific procedures for investigating complaints. N.Y. Comp. Codes, R. and Regs. tit. 18, § 432.2(b)(1). In this case, Plaintiff has not suggested that ACS failed to follow the proper procedures for investigating complaints or protecting potentially vulnerable children. Rather, Plaintiff alleges that the investigation prevented him from celebrating Passover with his family, and that it "ruined [his] holiday." Plaintiff has not established, however, that a temporary separation during an investigation into child abuse allegations violated his constitutional rights.

Finally, Plaintiff asserts that his belongings were packed and moved on the day before the shelter was to be vacated, and that some of his belongings were damaged or lost. The Fourteenth Amendment protects individuals from the deprivation of property without due process of law. However, in order to bring a Fourteenth Amendment claim, a plaintiff must show either (1) that an "established state procedure" deprived him of property "without according him proper procedural safeguards," *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982), or (2) that "random and unauthorized conduct" of a state employee resulted in the intentional deprivation of property and that "a meaningful postdeprivation [state] remedy for the loss [was not] available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Thus, deprivation of property is only actionable in federal court if the state does not provide procedural safeguards or an adequate post-deprivation remedy for the loss. *Parratt v. Taylor*, 451 U.S. 527, 542-43 (1981), *overruled in part on other*

*grounds by Daniels v. Williams,* 474 U.S. 327, 330-31 (1986); *Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987) ("[S]ection 1983 [can]not be made a vehicle for transforming mere civil tort claims into constitutional injuries."). Here, Plaintiff has not described any efforts he made to seek compensation or return or alleged that such remedies do not exist through state agencies and courts. Accordingly, Plaintiff's personal property claims are dismissed.

## CONCLUSION

For the foregoing reasons, the amended complaint is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 269 U.S. 438, 444-45 (1962). The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

/s/ LDH_____
LaShann DeArcy Hall
United States District Judge

Dated: Brooklyn, New York
      October 19, 2017